QUINTANA BROTHERS & CO., PLAINTIFFS AND APPELLANTS, v. S. RAMÍREZ & CO. ET AL., DEFENDANTS AND RESPONDENTS.

## APPEAL from the District Court of Humacao in an Action for Trial of Right to Personal Property.

No. 1263.—Decided July 12, 1915.

MERCANTILE REGISTRY—THIRD PERSON.—Registration does not create a juridical personality, but determines the necessity of its acknowledgment by third persons.

ID.—MERCANTILE PARTNERSHIP—POWER TO SUE.—As a general rule, in accordance with law and jurisprudence, in order that a mercantile partnership in Porto Rico may appear in court and enforce its rights against third parties, it is necessary that it be constituted by a public instrument and that the instrument appear recorded in the mercantile registry, albeit its not being recorded does not necessarily imply the non-existence of the partnership.

ID.—ATTACHMENT OF INTEREST IN PARTNERSHIP—ESTOPPEL.—When a creditor, basing his action on the articles of partnership of a firm, attaches the interest of his debtor in the said firm, he is estopped from denying its existence although it is not registered in the mercantile registry.

APPEAL—JUDGMENT.—According to section 306 of the Code of Civil Procedure as amended in 1906, in cases of this kind this court should not limit itself to reversing the decision appealed from, but should render the judgment which the lower court should have rendered.

CONSTRUCTION OF LAW—REPEAL.—Section 246 of the Code of Civil Procedure, which prescribes that shares and interests in any corporation or company may be attached, does not repeal article 174 of the Code of Commerce for the two sections can be harmonized without difficulty.

MERCANTILE PARTNERSHIP—CREDITOR OF PARTNER—ATTACHMENT.—The creditor of a partner of a mercantile firm had, before the Code of Civil Procedure was adopted, and still has legal means of securing his credit with the interest of the partner in the capital of the firm, but the law did not and does not authorize a creditor of a partner to invade the sanctity of the partnership for that purpose, point out himself the interest of the partner as shown by the articles of partnership, extract property of the partnership equal in value to the said interest and place it in the custody of a third person, thereby practically threatening the destruction of the life of the partnership.

ID.—CAPITAL STOCK—PRIVATE OBLIGATIONS.—Properties of all kinds which the partners contribute to a mercantile partnership in order to make up its capital

become the exclusive property of the partnership and cannot be used to discharge the private obligations of the partners until the partnership is liquidated and its debts paid.

The facts are stated in the opinion.

*Mr. Carlos Travecier* for the appellants.

*Messrs. Aponte & Aponte* for the respondents.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is a case of the trial of the right to personal property. The facts are as follows:

The mercantile firm of S. Ramírez & Company, with its principal office in San Juan, attached certain merchandise to secure the effectiveness of such judgment as might be rendered in a certain action of debt brought by them against Domingo Quintana Colón. The attachment having been levied, the mercantile firm of Quintana Brothers & Company, following the special proceeding prescribed by the Act providing for the trial of the right to personal property (Acts of 1907, pages 308 *et seq.*), claimed that the attached property belonged to them. The complaint of Quintana Brothers & Company, as finally filed is, in brief, as follows:

1. That the plaintiff is a mercantile partnership created by a public instrument recorded in the Mercantile Registry of San Juan, with its domicile in the town of Yabucoa.

2. That on July 8, 1913, in a certain action of debt brought by S. Ramírez & Company and others in the District Court of Humacao against Domingo Quintana Colón and Carlos Benítez Santana the marshal of the court levied an attachment on certain specified merchandise which the plaintiffs designated as belonging to Domingo Quintana, consisting of sacks of flour, sugar, rice, etc.

3. That on July 9, 1913, the said merchandise belonged to the plaintiff firm and now belongs to them, a fact which was known to the defendant firm.

4. That the plaintiff firm have not sold the said merchandise to Domingo Quintana or to any other person.

5. That the said merchandise has a value of $1,036.

In its answer to the complaint the firm of S. Ramírez & Company alleged, in synopsis, as follows:

1. They deny each and all of the allegations of the complaint.

2. As new matter of defense they allege that Quintana Brothers & Company are a mercantile firm whose articles of partnership have not been recorded in the Mercantile Registry of Porto Rico and were not so recorded in the month of July, 1913, and that the said firm have no capacity to sue or to bring the proceedings in intervention.

Based on the foregoing pleadings, the case went to trial on May 15, 1914, and it was proven on trial that the attachment referred to was levied by the marshal in compliance with a certain order to secure the effectiveness of the judgment, after the designation of property by S. Ramírez & Company, as follows:

"Judicial District of Humacao.   In the District Court.   *S. Ramírez & Company* v. *Domingo Quintana Colón* and *Carlos Benítez Santana, defendants.*   Action of debt.   To the Marshal of the Judicial District of Humacao, P. R.   Sir:   For the purpose of securing the effectiveness of such judgment as may be rendered in the above-entitled case the plaintiffs herein, S. Ramírez & Company, designate the stock of merchandise of the firm of Quintana Brothers & Company as the property which you should attach up to the amount of $1,000, which is the interest of defendant Domingo Quintana Colón in the said firm.   Humacao, P. R., July 8, 1913.   F. Ramírez de Arellano, by Aponte & Aponte, Attorneys for Defendants."

The return on the writ of attachment is as follows:

"I, Augusto Ortiz, Marshal of the District Court for the Judicial District of Humacao, P. R., certify: That on July 8, 1913, I received the foregoing writ of attachment to secure the effectiveness of such judgment as may be rendered in the above-entitled case and that I executed the same on the same day in Yabucoa, where defendant Domingo Quintana Colón has his domicil, by delivering to and leaving with him a true and exact copy of the said writ and demanding that he pay to the plaintiff firm of S. Ramírez & Company the sum of $960.70; and as he neither paid the said amount

nor furnished security, I proceeded, under the designation of the plaintiff firm of S. Ramírez & Company, to levy an attachment upon said stock of merchandise to the amount of $1,000, which is the interest of said defendant Domingo Quintana Colón in the firm of Quintana Brothers & Company, Limited, as shown by the articles of partnership entered into in Humacao in April of this year before Notary Francisco González Fagundo. The merchandise attached is described as follows: 82 sacks of Minnesota flour, $410; 8 sacks of 2d central sugar, $65; 10 sacks of '*canilla*' rice, T. P. R. F. C., $40; 13 do. Jap. 304, $52; 33 cases of 'Estrella' kerosene and 9 do. 'Castillo,' $68; 22 do. 'Medoc' wine, $70; 45 cans of oxide of iron, $135; 9 cans of white zinc, $11.25; 8 kegs of old rum, 50 gals., $70; 1 do. claret wine, $35; 2 scales, $40; 8 cases cigarettes, $40; total, $1,036.25. At the instance of the plaintiffs I deposited the said merchandise with Méndez Brothers & Company by delivering the same to them in perfect condition, and I warned them of the responsibility of depositaries of attached property and that they should not deliver the same to any person without an order of the court. Yabucoa, July 9, 1913. Augusto Ortiz, District Marshal, by Rafael Más, Deputy Marshal.''

Defendants S. Ramírez & Company admitted on trial that ''the firm of Quintana Brothers & Company is a limited mercantile partnership,'' but showed by a certificate issued by the Registrar of Property of San Juan that the said firm was not registered in the Mercantile Registry either before or after or at the time of the filing of the complaint.

Accepting these facts as true and on the ground that the plaintiff firm lacked capacity to bring this proceeding because it was not registered in the Mercantile Registry, the District Court of Humacao rendered judgment on July 3, 1914, dismissing the complaint.

From that judgment an appeal was taken to this court on the ground that the trial court committed two fundamental errors, namely:

1. In holding that Quintana Brothers & Company lacked capacity to bring the action of intervention.

2. In not rendering judgment in favor of the plaintiffs, thus violating article 174 of the Code of Commerce.

Let us examine the two errors assigned which, in fact, refer to the only two fundamental questions involved in this case.

In their brief the respondents contend that, "according to articles 119 and 17 of the Code of Commerce, it is an indispensable requisite to the personality of a mercantile firm that its articles of partnership be previously recorded in the Mercantile Registry, and the judgment of the Supreme Court of Spain of May 8, 1885 (57 Civil Jurisprudence, 723), decides the matter clearly in a similar action for the trial of the right to personal property brought by a mercantile partnership which was not registered in the registry."

The articles of the Code of Commerce cited by the respondent read as follows:

"Art. 17.—The record in the commercial registry shall be optional for private merchants and compulsory for associations established in accordance with this code or with special laws, and for vessels.

"Art. 119.—Every commercial association before beginning business shall be obliged to record its establishment, agreements, and conditions in a public instrument, which shall be presented for record in the commercial registry, in accordance with the provisions of article 17.

"Additional instruments which modify or alter in any manner whatsoever the original contracts of the association are subject to the same formalities, in accordance with the provisions of article 25.

"Partners cannot make private agreements, but all must appear in the articles of copartnership."

The judgment of the Supreme Court of Spain cited by the respondent lays down the following doctrine:

"In deciding the claim of the third party arising from the levy of the attachment by basing its judgment on article 296 of the Code of Commerce, the trial court violated the articles of the said code which are cited in the appeal and particularly article 28 in its relation to articles 22 and 25, because the intervening firm did not legally exist and could not take advantage of the said article in order to bring an action against a third party without having recorded its articles of partnership in the general registry of the province; and

as this was not done until June 20, 1882, while the attachment was decreed in administrative proceedings on the 10th, a levy was attempted on the 12th without result and finally made on the 13th of the said month, it is evident that the articles of partnership executed in the interval between the last two dates, which were prior to its record, could not serve as a bar to the attachment or invalidate it afterwards."

For the purposes of fixing the scope of the jurisprudence and the statutory provisions invoked, it is necessary, to analyze the facts on which the judgment of the Supreme Court of Spain of May 8, 1885, was based and to review articles 17 and 119 of the Code of Commerce in their relation to article 24 thereof.

By its judgment of May 8, 1885, the Supreme Court of Spain reversed the judgment of the Civil Court of Havana of June 6, 1884. In order to understand the circumstances of that case it is sufficient to transcribe the errors assigned by the appellant in his appeal ·which was sustained by the Supreme Court of Spain, namely:

"1. Articles 285 and 288 of the Code of Commerce were infringed because the judgment appealed from gives force and effect as against a third party to the contract of a partnership entered into by a private document and in a personal capacity prior to the execution of the instrument of June 12, 1882, by Fernández Gómez, Roldan and Presno to the extent of including in the funds of the partnership the capital of the first-named against whom a writ of execution for 7,000 *pesos* had issued (June 10) and a levy attempted (12th of the same month).

"2. Articles 22, 25 and 28 and their correlatives of the Code of Commerce were violated because the judgment appealed from gives force and effect to the instrument of June 12, 1882, for public purposes and against third parties before it was recorded, a requirement which was not complied with until July 20, or seven days after the merchandise in the hardware store on Cuba Street had been levied. on as the property of Angel Fernández Gómez."

Article 24 of the Code of Commerce, before referred to, reads as follows:

"Instruments constituting associations not recorded shall be binding between the members who execute the same; but they shall not prejudice third persons, who, however, may make use thereof in so far as advantageous."

In the work on "Spanish and Foreign Codes of Commerce," by Manzano, Bonilla and Miñana, it is said in Volume II, page 49, that "the record creates no juridical personality but determines the necessity of its acknowledgment by a third party." And on page 110 of the same volume the following appears:

"We have stated previously that a mercantile company, as a collective personality, is created by the articles of partnership and in treating of partnerships later we will refer to this subject at greater length. We will point out here that said article 24 gives validity to unrecorded articles of partnership by prescribing that they shall be effective as to the partners who execute the same. The contract being valid, the collective personality created thereby has legal existence and its acts are also valid."

Commenting upon article 2 of the Mortgage Law in Volume I, page 347, of his well-known work, Galindo expresses himself as follows:

"Article 17 of the Code of Commerce makes it obligatory that mercantile partnerships be recorded in the mercantile registry, but it is not settled whether the violation of that provision is a bar to the admission to record in the registry of property of deeds of acquisition or alienation of property executed by a partnership which is not shown to have complied with such requisite.

"We are inclined to believe that such deficiency is not one of the defects referred to in article 65 of the Mortgage Law and we base our conclusion upon the fact that although partnerships are prohibited from beginning their operations without first being recorded in the mercantile registry, article 24 of the said code provides that instruments constituting associations not recorded shall be binding between the members who execute the same, but they shall not prejudice third persons, who, however, may make use thereof in so far as advantageous.

"From this it is correctly inferred that the status of unrecorded partnerships is disadvantageous before the law, but they have a juri-

dical personality with relation to third parties and, therefore, deeds by which they acquire or dispose of property may be recorded.".

In view of the foregoing we must conclude that as a general rule and in accordance with law and jurisprudence, in order that a mercantile partnership in Porto Rico may appear in court and enforce its rights asserted against third parties, it is necessary that it be constituted by a public instrument and that the instrument appear recorded in the mercantile registry, albeit its failure to be recorded does not necessarily imply the non-existence of the partnership.

In the present case it is a self-evident fact that the plaintiff firm was created by a public instrument prior to the attachment levied at the instance of the defendant; but it is also true that the articles of partnership were not recorded in the mercantile registry, therefore, applying the general rule stated, the judgment appealed from should be affirmed. Moreover, there are special circumstances in this case which the court cannot leave out of consideration for the purpose of rendering the judgment which justice dictates.

This is not the case of an attachment of property of a particular person which is afterwards claimed by another distinct entity. Ramírez & Company did not attach property in the possession of their debtor, but, actually basing their action on the articles of partnership of Quintana Brothers & Company, Limited, they attached the interest of their debtor in the said firm and, therefore, are estopped from now denying its existence.

According to article 24 of the Code of Commerce, Ramírez & Company could and did make good use of the articles of partnership of Quintana Brothers & Company, Limited, although the same were not recorded in the mercantile registry, for the purpose of determining the amount of the interest of their debtor in the said firm, but Ramírez & Company cannot at one and the same time recognize and deny the existence of Quintana Brothers & Company, Limited, as we shall see later.

The district court having committed the first of the errors assigned, we will now review the second, for, according to section 306 of the Code of Civil Procedure as amended in 1906 (Acts of 1906, page 164), in cases like the present this court should not limit itself to reversing the decision appealed from, but should render the judgment which the lower court should have rendered.

The appellant contends that according to article 174 of the Code of Commerce the defendant firm had no right to attach the stock of merchandise of Quintana Brothers & Company in the manner in which it did in an amount equal to the interest of the partner Domingo Quintana therein for the purpose of securing the effectiveness of the judgment which might be rendered in an action which the said defendant firm brought against the said Quintana.

And the respondent maintains that although article 174 of the Code of Commerce might be construed as viewed by the appellant, the said article is not applicable because it was impliedly repealed by section 246 of the Code of Civil Procedure.

Said section 246 provides that "shares and interest in any corporation or company may be attached" and, in our opinion, does not repeal article 174 of the Code of Commerce. On the contrary, we think that the two sections can be harmonized without difficulty.

There is no doubt that in former times as well as now the creditor of a partner of a mercantile firm of whatever class had and still has legal means of securing his credit with the interest of the partner in the capital of the firm, but the law did not and does not authorize a creditor of a partner to invade the sanctity of the partnership, point out himself the interest of the partner as shown by the articles of partnership, remove property of the partnership equal in value to the said interest and place it in the custody of a third person for the purpose of securing his credit, thereby practically threatening the destruction of the life of the partnership.

A partnership is a juridical person distinct from the natural persons of the members who compose it. According to law, such juridical person has its rights and obligations and one of the rights consists in the acquisition, possession and enjoyment of corporeal property. The property acquired by the partnership belongs to the partnership and not to any of the members individually. The members have interests in the capital, but such interests follow the fortune of the partnership. It is only when the partnership is dissolved and liquidated that the members individually acquire the interests belonging to them.

In an action of intervention brought by William Henry Redding against Mateo Chomat in the Island of Cuba the Supreme Court of Spain by its judgment of July 12, 1883, (52 Civil Jurisprudence, 487,) laid down the following doctrine which is directly applicable to this case:

"*First.* Property of all kinds which the partners contribute to a mercantile partnership in order to make up its capital becomes the exclusive property of the partnership itself and cannot be used to discharge private obligations of the members until the partnership is liquidated and its debts paid.

"*Second.* According to article 296 of the Code of Commerce, private creditors of a partner cannot extract from the capital of the firm, by virtue of their credits, the funds which their debtor possesses therein, and will be allowed only to attach the interest which may be shown to belong to him after the liquidation of the firm in order to receive the same at the time when the debtor could receive it.

"*Third.* An action of intervention in ownership is the remedy authorized by law to dissolve and set aside a levy on property which does not belong to the judgment debtor."

And American jurisprudence is to the same effect. See the following excerpts:

"The debts of a partnership must be discharged out of the partnership property before any portion of it can be applied to the individual debts of the partners; and the creditors of the partnership are entitled to preference over the creditors of the individual part-

ners in the payment of their debts out of the partnership property or moneys arising therefrom, without regard to the priority of attachment liens." *Wheelan* v. *Shain,* 115 Cal., 326.

"The point came up before Mr. Justice Story, in a case where, in a suit against G. & G., the garnishee answered that he was indebted to G. & L., one of the defendants being a member of both firms. The court, in deciding against the liability of the garnishee, observed: 'In order to adjudge the trustee responsible in this suit, it must be decided that the funds of one partnership may be applied to the payment of the debts of another partnership, upon the mere proof that the principal debtor has an interest in each firm. If this be correct it will follow that a separate creditor of one partner will have greater equitable as well as legal rights, than the partner himself has. The general rule undoubtedly is, that the interest of each partner in the partnership fund is only what remains after the partnership accounts are taken; and unless upon such an account the partner be a creditor of the fund, he is entitled to nothing. And if the partnership be insolvent the same effect follows.' *Lyndon* v. *Gorham,* 1 Gall., 367." *Sheedy* v. *Second National Bank,* 62 Mo., 17, 21 Am. Rep., 410.

"Interest in partnership property liable to the satisfaction of the separate debts of each partner, is the interest of each in the property as it stands after the partnership accounts have been settled, and the demands of the partnership creditors provided for." *Winston* v. *Ewing* (1 Ala., 129), 34 Am. Dec., 768.

In view of the foregoing the judgment appealed from should be reversed and another rendered sustaining the complaint and decreeing as a consequence that the property attached belongs to the plaintiff and ordering that the attachment of the said property at the instance of the defendant firm be vacated, reserving to the said firm such rights as it may have according to law, without special imposition of costs.

*Reversed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.